THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | |
|---|---|
| JAIMIE RAGER, *Mother, Guardian, and Next Friend of G.C., a minor,* | ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 1:19-CV-042 ) |
| MCMINN COUNTY, TENNESSEE, *et al.*, | ) ) |
| Defendants. | ) ) |

## **MEMORANDUM OPINION**

This matter is before the Court for consideration of the motion for summary judgment filed by Defendants. [Doc. 28]. Plaintiff has responded [Doc. 35], and Defendants have replied [Doc. 36]. Oral argument is unnecessary, and the motion is ripe for the Court's determination.

Plaintiff has filed suit pursuant to 42 U.S.C. § 1983, on behalf of Timothy Cook's ("Decedent") child and sole heir. Plaintiff alleges, *inter alia*, that Defendants violated Decedent's Eighth and Fourteenth Amendment rights by acting with deliberate indifference to his safety by failing to protect him from other inmates while he was a pre-trial detainee, failing to properly fund the McMinn County Detention Center ("Detention Center") to insure the appropriate treatment of detainees, and failing to adequately monitor and evaluate the performance of the employees with respect to their duties to protect detainees from known dangers. Plaintiff alleges that Defendants were acting pursuant to an

official policy or custom of deliberate indifference which was the proximate cause of, and moving force behind, Decedent's death. Plaintiff also raises claims under Tennessee Code Annotated §§ 41-2-108, 41-4-101, & 41-21-201 against Defendant McMinn County Sheriff Joe Guy ("Defendant Guy"). For the reasons that follow, the motion will be **GRANTED in part** and **DENIED in part**.

I. BACKGROUND

The facts of this case are largely undisputed by the parties. On February 17, 2018, Decedent was arrested by the Athens Tennessee Police Department for Driving Under the Influence and taken to the Detention Center. He was placed in holding cell one ("Cell One") until the booking process was completed and he could be moved out of the booking area. In the video recording of the Detention Center [Doc. 28, Ex. 6], the lights in Cell One were off when Decedent was placed inside. That same day, Jarrod Jones ("Jones") was arrested for Theft and Trespass and brought to the Detention Center. Jones was also placed in Cell One for booking, and the lights in the cell remained off. The Detention Center had a total of five cells in the booking area, and it was not uncommon for multiple men to be held together in Cell One, which is the largest cell in that area.

At approximately 6:22:43 p.m., Jones appears to kick Decedent in Cell One and begins to beat him.[1] [*Id.*]. Deputy Dale Murray ("Deputy Murray") informed Defendant Officer Derrick Saxe ("Defendant Saxe"), who was seated at the booking desk within

---

[1] The Court notes that because the lights were off in Cell One, it is impossible to see what prompted the fight or whether there were warning signs that a fight was likely to occur. Had the lights in Cell One been on, not only would the video be clearer, but it is possible that Defendant Saxe would have seen signs of agitation in Jones before the fight began.

2

eyesight of Cell One, that there was a fight happening. Deputy Murray saw Decedent fall and Jones stomp Decedent before alerting Defendant Saxe. Deputy Murray walked to Cell One. Defendant Saxe stood up and saw Jones hitting and stomping Decedent, grabbed the cell key, and jogged to Cell One behind Deputy Murray. [*Id.*]. Defendant Saxe and Deputy Murray arrived at Cell One approximately 12 seconds after Deputy Murray first noticed the fight, and approximately 14 seconds after the fight began. The officers did not enter Cell One until approximately 16 seconds after the fight began. [*Id.*]. Defendant Saxe gave verbal commands for Jones to back away, and Jones complied until Defendant Saxe started to handcuff him. Deputy Murray deployed his taser into Jones to gain compliance, then the officer removed Jones from the cell and placed him in a restraint chair. After Jones was removed from Cell One, Deputy Murray radioed for EMS to send an ambulance while another officer who had arrived as back-up turned on the cell lights and administered CPR to Decedent. Decedent was not breathing, he was unresponsive, and he had no pulse. Officers also applied A.E.D. defibrillation shocks to Decedent to no avail. At approximately 6:34 p.m., EMS arrived on the scene. Decedent was transported to the University of Tennessee Medical, where he was pronounced dead. Jones was later convicted of first-degree murder.

      While this was Decedent's first time in the Detention Center, Jones has a long history of incarcerations at the Detention Center and had been disciplined several times in the past for assaulting other inmates, both in the booking area and in the general population. Prior to the incident on February 17, 2018, Jones had been disciplined six times for assaulting other inmates in the prior fifteen times he had been incarcerated there. [Doc. 6,

3

Ex 1]. Of note, on January 29, 2018, nineteen days prior to the altercation with Decedent, Jones was arrested and brought to the Detention Center on charges of Aggravated Burglary Theft of Property over $1,000. While Jones was in Cell One awaiting booking, he assaulted another inmate in the booking area, similar to his assault on Decedent. [*Id*.]. While one officer was working on booking the inmates, another officer informed the booking officer that there was a fight in Cell One. Jones was punching the other inmate while the inmate was on the ground. Defendant Saxe was the supervising officer at the time of both of these incidents. Later that day, Jones assaulted another inmate. Even after murdering Decedent, Jones continued to assault inmates on February 22, 2018, and May 13, 2018. [*Id*.].

McMinn County has policies 5.01 and 5.02 which pertain to inmate behavior [Doc. 28, Ex. 3], and Defendant Saxe and Defendant Guy both stated that it is McMinn County policy to treat every person the same whenever they are brought to the Detention Center, even those with past disciplinary issues, until a person establishes a reason that they would need to be treated differently.[2] Policy 5.01 sets forth the due process for inmates and the procedures for disciplinary actions. Policy 5.01 goes on to define the potential punishments an inmate can face for a rule violation and the procedures for disciplining inmates, reporting rule violations, investigating the alleged violations, confiscating evidence or contraband, relocating inmates, disciplinary hearings, appeals, etc. Under policies 5.01 and 5.02, inmate assault and/or homicide is a Class A, or highest offense violation, which may

---

[2] The Court notes that the two policies provided do not state or indicate that every person is afforded a "clean slate" every time they are brought to the Detention Center according to Defendants Guy and Saxe.

4

result in disciplinary segregation for up to sixty (60) days or thirty (30) days per offense, administrative segregation, an increase in an inmate's sentence, forfeiture of good time credits, and a referral for criminal prosecution. [*Id*.]. Policy 5.02 defines and lists the prohibited behavior and classifies the behavior into different levels of severity. [*Id*.].

II. **STANDARD OF REVIEW**

Defendants' motion is brought pursuant to Federal Rule of Civil Procedure 56, which governs summary judgment. Rule 56(a) provides in pertinent part: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The procedure set out in Rule 56(c) requires that "[a] party asserting that a fact cannot be or is genuinely disputed must support the assertion[.]" Fed. R. Civ. P. 56(c)(1). This can be done by citation to materials in the record, which include depositions, documents, affidavits, stipulations, and electronically stored information. Fed. R. Civ. P. 56(c)(1)(A). Additionally, a party may "show[] that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(B).

After the moving party has carried its initial burden of showing that there are no genuine issues of material fact in dispute, the burden shifts to the non-moving party to present specific facts demonstrating that there is a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). "The 'mere possibility' of a factual dispute is not enough." *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582 (6th Cir. 1992) (quoting *Gregg v. Allen-Bradley Co.*, 801 F.2d 859, 863 (6th Cir. 1986)). Moreover, mere

5

conclusory and unsupported allegations, rooted in speculation, are insufficient to meet this burden. *Bell v. Ohio State Univ.*, 351 F.3d 240, 253 (6th Cir. 2003).

To defeat a motion for summary judgment, the non-moving party must present probative evidence that supports its complaint. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986). The non-moving party's evidence is to be believed, and all justifiable inferences are to be drawn in that party's favor. *Id*. at 255. The court determines whether the evidence requires submission to a jury or whether one party must prevail as a matter of law because the issue is so one-sided. *Id*. at 251-52.

### III. ANALYSIS

#### A. Individual Defendants' § 1983 Liability for Failure to Protect

##### 1. *Claims Against Defendant Saxe*

Defendant Saxe asserts that Plaintiff cannot maintain her claims against him because he responded to the disturbance in twelve seconds, and he is entitled to qualified immunity. [Doc. 29, p. 6]. Plaintiff responds that Defendant Saxe is not entitled to qualified immunity because Decedent's right to safety was a clearly established constitutional right, and Defendant Saxe both objectively and subjectively knew that his inaction constituted deliberate indifference to Decedent's safety. [Doc. 35, p. 6]. Defendants reply that Defendant Saxe was not on shift when Jones and Decedent were brought into the Detention Center and had no role in placing them in the cell together. [Doc. 36, p. 2]. Defendants further assert that alleging supervisor liability for Defendant Saxe is misplaced, as a

6

constitutional violation based on a policy's existence does not trigger individual liability. [*Id*.].

As the Sixth Circuit has established, "Plaintiff bears the burden of showing that defendants are not entitled to qualified immunity." *Chappell v. City of Cleveland*, 585 F.3d 901, 907 (6th Cir. 2009). "Qualified immunity is a personal defense that applies only to government officials in their individual capacities." *Benison v. Ross*, 765 F.3d 649, 665 (6th Cir. 2014) (citation omitted). It insulates government officials "from undue interference with their duties," *Harlow v. Fitzgerald*, 457 U.S. 800, 806 (1982), affording them "breathing room to make reasonable but mistaken judgments" and protecting "all but the plainly incompetent or those who knowingly violate the law." *Stanton v. Sims*, 571 U.S. 3, 5 (2013) (internal quotation marks omitted) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011)). To defeat a qualified immunity defense, a "plaintiff must show both that, viewing the evidence in the light most favorable to her, a constitutional right was violated and that the right was clearly established at the time of the violation." *Id*. If a plaintiff fails to show either that a constitutional right was violated or that the right was clearly established, she will have failed to carry her burden. *Id*. "Moreover, to satisfy the second prong of the standard, plaintiff must show that the right was clearly established in a 'particularized sense,' such that a reasonable officer confronted with the same situation would have known" that their actions violated that right. *Id*. The Supreme Court has stated that courts may address these two issues in the order they think best. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). This Court will first address whether there was a clearly

established constitutional right, then will determine whether the constitutional right was violated.

### a. Whether the constitutional right was clearly established

The constitutional right at issue in this case—Decedent's right to be free from violence at the hands of other inmates—was clearly established by the Supreme Court in *Farmer v. Brennan,* 511 U.S. 825 (1994). *Farmer* held that "prison officials have a duty to protect prisoners from violence at the hands of other prisoners" because corrections officers have "stripped them of virtually every means of self-protection and foreclosed their access to outside aid." *Id.* at 833 (ellipsis and internal quotation marks omitted); *see also Wilson v. Yaklich,* 148 F.3d 596, 600 (6th Cir. 1998) ("Without question, prison officials have an affirmative duty to protect inmates from violence perpetrated by other prisoners."). Here, both parties agree that Decedent was a pre-trial detainee, and pre-trial detainees retain analogous Eighth Amendment rights under the Fourteenth Amendment. [Doc. 29, p. 5]; [Doc. 35, pp. 8-10]; *see also Ruiz-Bueno v. Scott*, Nos. 14-4149, 14-4151, 639 Fed. App'x. 354 (6th Cir. Feb. 2, 2016).

Thus, Plaintiff has met her burden to show that there was a clearly established constitutional right in this case, and the Court will continue with its analysis.

### b. Whether the constitutional right was violated

To show that a clearly established constitutional right was violated, Plaintiff must allege sufficient facts supported by sufficient evidence that Defendant Saxe acted "objectively unreasonable in light of [the decedent's] clearly established constitutional rights." *Adams v. Metiva*, 31 F.3d 375, 387 (6th Cir. 1994).

While Defendant Saxe was not responsible for initially placing Decedent and Jones in Cell One together, Defendant Saxe knew of Jones' violent past with both inmates and pre-trial detainees. The Court finds that Defendant Saxe's actions, or inaction in this case, were objectively unreasonable, especially in light of Jones' prior altercation with a pre-trial detainee nineteen days prior during which Defendant Saxe was the supervising officer. Defendant Saxe had an affirmative duty to protect Decedent, and his actions of allowing Decedent to remain in a dark, confined cell with a historically violent inmate was objectively unreasonable and violated Decedent's constitutional rights. As such, Defendant Saxe is not entitled to qualified immunity as to this claim.

Because Defendant Saxe is not entitled to qualified immunity, the Court must now determine whether he is entitled to summary judgment as to Plaintiff's § 1983 failure to protect claim. "A prison official violates the Eighth Amendment only when two requirements are met. First, the deprivation alleged must be, objectively, sufficiently serious. For a claim (like the one here) based on a failure to prevent harm, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834 (internal quotations and citations omitted). "The second requirement follows from the principle that only the unnecessary and wanton infliction of pain implicates the Eighth Amendment." *Id* (internal quotations and citations omitted). "A prison official cannot be found liable under the Eighth Amendment … unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id*., at 837.

Here, there is no question that the deprivation alleged is objectively "sufficiently serious," and Plaintiff has presented sufficient facts showing that Decedent was incarcerated under "conditions posing a substantial risk of serious harm." There are questions of fact best left for a jury regarding whether Defendant Saxe acted with deliberate indifference when he did not separate Jones and Decedent. A reasonable jury could find that Defendant Saxe knew of the risk Jones posed to Decedent and he disregarded that risk by allowing the two to remain in a dark cell together. Accordingly, the motion for summary judgment [Doc. 28] on the § 1983 claim for failure to protect raised against Defendant Saxe in his individual capacity will be **DENIED**.

## 2. *Claims against Defendant Guy*

Defendant Guy asserts that Plaintiff cannot maintain her claims against him in his individual capacity because he is entitled to qualified immunity, and he did not encourage the specific incident, nor did he actively participate in it. [Doc. 29, p. 8]. Plaintiff responds that by implementing the policy at issue, Defendant Guy "violated clearly established statutory or constitutional rights of which a reasonable person would have known." [Doc. 35] (internal quotations and citations omitted).

As discussed above, Decedent's constitutional right to be free from violence at the hands of other inmates is a clearly established one. As Sherriff, Defendant Guy is responsible for implementing policy, including the policy which, as discussed in more detail below, was the moving force behind Decedent's death. It was objectively unreasonable for Defendant Guy to have instituted a policy which does not allow affirmative action to be taken to prevent violence at the hands of other inmates, violating

10

the Eighth and Fourteenth Amendment rights of pre-trial detainees to be free from violence at the hands of other inmates. Thus, he is not entitled to qualified immunity. Supervisory liability, distinct from municipal liability, cannot be imposed in a § 1983 action based on a theory of *respondeat superior* without proof of personal involvement. *Taylor v. Michigan Dep't of Corr.*, 69 F.3d 76, 80-81 (6th Cir. 1995). "Supervisory liability under § 1983 does not attach when it is premised on a mere failure to act; it must be based on active unconstitutional behavior." *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002) (internal quotations omitted). "However, 'active' behavior does not mean 'active' in the sense that the supervisor must have physically put his hands on the injured party or even physically been present at the time of the constitutional violation…at a minimum, the plaintiff must show that the defendant at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers." *Peatross v. City of Memphis*, 818 F.3d 233, 242 (6th Cir. 2016) (internal citations omitted).

Here, a reasonable jury could find, that Defendant Guy's implementation and enforcement of this policy constitute unconstitutional behavior. While Defendant Guy did not personally place Decedent in Cell One with Jones, his policies regarding where pre-trial detainees were placed during booking and regarding the "clean slate" treatment of every person who was brought to the Detention Center constitutes active unconstitutional behavior as these policies essentially prohibit the affirmative duty to protect afforded to pre-trial detainees. Accordingly, the motion for summary judgment [Doc. 28] on the § 1983 claim for failure to protect raised against Defendant Guy in his individual capacity will be **DENIED**.

11

## B. McMinn County's § 1983 Liability for Failure to Protect

Defendant McMinn County asserts that it cannot be held liable pursuant to § 1983 for constitutional torts committed by its officers and employees based on the doctrine of *respondeat superior*. [Doc. 29]. Plaintiff argues that it is Defendant McMinn County's policy which has inflicted the injury to Decedent, making Defendant McMinn County liable. [Doc. 35].

There is no *respondeat superior* liability under § 1983 for municipalities and governmental entities. *Monell v. Dep't of Soc. Serv.of the City of New York*, 436 U.S. 658, 694 (1978); *Gregory v. City of Louisville*, 444 F.3d 725, 752 (6th Cir. 2006). Instead, "it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Monell*, 436 U.S. at 694. For the county to have liability under § 1983, a plaintiff is required to demonstrate that the county, through its deliberate conduct, was the "moving force" behind the alleged violation of his federal constitutional rights. *Id*. Generally, there are two ways of imposing supervisory liability: (1) a pattern of conduct; or (2) a truly egregious single incident. *Dillingham*, 809 F. Supp. 2d at 846 (citing *Ontha*, 222 F. App'x at 504-05).

Here, Plaintiff has shown a pattern of conduct which was the moving force behind the constitutional violation discussed above. Both Defendants Saxe and Guy stated that it was official policy or custom to treat everyone as if it was their first time incarcerated at the Detention Center until that person violated the rules. [Doc. 28, Ex. 1]; [Doc. 31]. Plaintiff has shown that Jones has been violent with other pre-trial detainees both before

12

and after murdering decedent, creating a pattern that following the policy with a notoriously violent person is likely to result in a constitutional violation. [Doc. 6, Ex. 1]. The evidence also shows that there were investigations into Decedent's death performed by the McMinn County Sheriff's Office, the McMinn County District Attorney's Office, and the Tennessee Bureau of Investigation which all concluded that the officers conducted themselves in accordance with the rules and practices. [Doc. 35, Ex. 4, pp. 17-19]. Plaintiff has plausibly alleged facts to show that the official policy was the moving force behind the constitutional violations against Decedent. Further, Plaintiff has shown that enforcing the policy, as it was in this case, makes it impossible for officers to fulfill their affirmative duties to protect pre-trial detainees. If official policy dictates that officers cannot segregate detainees until *after* violence has occurred, regardless of their previous history at that facility, then it logically and obviously follows that officers cannot fulfill their constitutional affirmative duty to prevent violence against pre-trial detainees. Accordingly, the motion for summary judgment on the § 1983 claim for failure to protect raised against Defendant McMinn County will be **DENIED**.

### C. Other Constitutional Claims

#### 1. *Failure to Fund the Jail*

Defendant asserts that Plaintiff has not provided factual support to maintain her claim against Defendants for failing to fund the jail. [Doc. 29]. Plaintiff alleges in her Amended Complaint that "[t]he Defendants failed to properly fund or properly obtain funding to insure the appropriate and proper treatment of detainees, including proper protection of detainees from other detainees." [Doc. 6, p. 11]. In her response to the motion

13

for summary judgment, Plaintiff does not offer evidence regarding the jail's funding deficiencies, nor does she argue specifically that this claim should be allowed to proceed to trial. Plaintiff has not even specified to which Defendant this claim applies, and instead has made a conclusory allegation. *See Bell*, 351 F.3d at 253. In light of the absence of factual support for this claim, Defendant's motion for summary judgment as to the § 1983 failure to fund claim will be **GRANTED,** and those claims against all Defendants will be **DISMISSED**.

### 2. *Failure to Train and Supervise claims against Defendants*

#### a. *Defendant McMinn County's Liability*

Defendants argue that Plaintiff has not shown that the county maintained a policy or custom that violated the plaintiff's rights as she has not shown that the failure resulted in deliberate indifference as to constitutional rights. [Doc. 29]. Plaintiff argues that the official policy occasioned the deliberate indifference to Decedent's constitutional right to be free from violence at the hands of other inmates. [Doc. 35].

A plaintiff can establish that inadequate training is the product of deliberate indifference "in one of two ways." *Shadrick v. Hopkins County*, 805 F.3d 724, 738 (6th Cir. 2015). She can plead sufficient facts showing (1) the municipality's officers engaged in a pattern of comparable constitutional violations or (2) "a single violation of federal rights, accompanied by a showing that [the municipality] has failed to train its employees to handle recurring situations presenting an obvious potential" for a violation. *Id*. at 738-39 (quoting *Bryan Cnty*., 520 U.S. at 409). An allegation of a pattern of similar misconduct—the first of the two approaches—is the "ordinar[y]" or traditional way for a plaintiff to

14

establish an inadequate-training theory. *Connick v. Thompson*, 563 U.S. 51, 62 (2011). This is so because repetitive wrongdoing by officers who exercise their discretion is a sure sign that those officers require additional training, and it should be "plainly obvious to the city policymakers." *Bryan Cnty.*, 520 U.S. at 407 (quoting *City of Canton v. Harris*, 489 U.S. 378, 390 n.10 (1989)). The Sixth Circuit has identified two instances in which a finding of deliberate indifference would be appropriate: "(1) where the training lapse occurs despite 'foreseeable consequences' that will flow from the lapse; and (2) where the training lapse occurs despite 'repeated complaints' to the municipality about the issues that should have been dealt with in training." *Lee v. Metro.Gov't of Nashville and Davidson Cty.*, 596 F. Supp. 2d 1101, 1124 (M.D. Tenn. 2009) (quoting *Ellis ex rel. Pendergrass v. Cleveland Mun. Sch. Dist.*, 455 F.3d 690, 700-01 (6th Cir. 2006)).

Here, a finding of deliberate indifference is appropriate because it is an obvious foreseeable consequence that placing a pre-trial detainee with another pre-trial detainee who has a history of assaulting other inmates will result in violence. The obviousness is especially evident in this case where Jones had a long history of assault and had assaulted another pre-trial detainee when he was last at the Detention Center, nineteen days prior to the incident with Decedent. Further, even after murdering Decedent, officers continued to follow the official policy, and Jones continued to assault other pre-trial detainees. *See* [Doc. 6, Ex. 1]. Even if Decedent's *death* was not a foreseeable consequence of enforcing this policy, any violence against him or any other pre-trial detainee at the hands of Jones was a foreseeable consequence of placing them in a cell together given Jones' long history of assault. The policy resulted in officers acting deliberately indifferent to Decedent's Eighth

15

and Fourteenth Amendment rights because the policy did not allow officers to affirmatively protect him from violence at the hands of other pre-trial detainees. Rather, the policy only allowed officers to take action against *further* violence. Accordingly, Defendants' motion for summary judgment as to the § 1983 failure to train claim will be **DENIED** as to Defendant McMinn County.

### b. *Defendant Guy's Liability*

"A supervisor is not liable under § 1983 for failing to train unless the supervisor either encouraged the specific incident or misconduct or in some other way directly participated in it. At a minimum, a plaintiff must show that the official at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers." *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009) (internal quotation marks omitted). The central question, therefore, is whether Defendant Guy "implicitly authorized, approved, or knowingly acquiesced" in the alleged violations of Decedent's Fourteenth and Eighth Amendment rights. A general failure to train claim has been routinely rejected by the Sixth Circuit as a means to impose liability on a supervisor in his or her individual capacity. *Dillingham v. Millsaps*, 809 F. Supp. 2d 820, 845 (E.D. Tenn. Aug. 10, 2011) (citing *Ontha v. Rutherford Cty.*, 222 F. App'x 498, 503-05 (6th Cir. 2007)). Absent personal involvement in the underlying unconstitutional act, the attempt to hold municipal supervisors liable in their individual capacities for their alleged failure to adequately train employees improperly conflates a § 1983 claim of individual supervisory liability with one of municipal liability. *Harvey v. Campbell Cty.*, 453 F. App'x 557, 563 (6th Cir. 2011).

16

Here, Plaintiff asserts that Defendant Guy, in his duty as Sherriff, is charged under the Tennessee Constitution with establishing "regulations governing the acceptance of persons, other than state prisoners, for incarceration in the county jail." [Doc. 35, p. 14] (internal citations omitted). In other words, Plaintiff asserts that Defendant Guy created the policy at issue and was responsible for its enforcement. Defendants argue that Defendant Guy is not liable because "a constitutional violation that arises from a policy's mere existence does not trigger individual liability for a supervisor under § 1983." [Doc. 36, p. 1] (internal citations omitted). Looking at the facts presented in the light most favorable to the non-moving party, there are questions of fact best left to the jury regarding whether Defendant Guy "implicitly authorized, approved, or knowingly acquiesced" in the violations alleged. At the very least, Plaintiff has plausibly alleged that Defendant Guy implicitly authorized Defendant Saxe and other officers to only react to violence and not prevent violence as discussed above. Accordingly, Defendants' motion for summary judgment as to the § 1983 failure to train claim will be **DENIED** as to Defendant Guy.

    c. *Defendant Saxe's Liability*

As discussed above, a supervisor is liable for failure to train if the officer "encouraged the specific incident or misconduct or in some other way directly participated in it." *Everson*, 556 F.3d at 495. Here, as discussed above, Plaintiff has plausibly shown that Defendant Saxe directly participated in the specific incident as he was on duty during the altercation and did not separate Decedent and Jones before the altercation despite being aware of Jones' past violent acts toward other inmates. Further Defendant Saxe stated that it was policy and to afford each person a "clean slate" when they were brought to the

17

Case 1:19-cv-00042-RLJ-SKL   Document 37   Filed 10/08/21   Page 17 of 19   PageID #: 427

Detention Center and that it was common for multiple people to be held in Cell One during the booking process even though there were four other empty cells. [Doc. 28, Ex. 1]. Accordingly, Defendants' motion for summary judgment as to the § 1983 failure to train claim will be **DENIED** as to Defendant Saxe.

   D.   **State Law Claims**

All that remains for consideration in this action are the pendent state law claims that the Plaintiff has raised against Defendant Guy for allegedly violating Tenn. Code Ann. §§ 41-2-108, 41-21-101, & 41-21-210. Defendants assert that Plaintiff's state law claims must fail as there is no Tennessee authority to bring a private cause of action under these specific statutes. [Doc. 29]. Defendants further assert that even if the Court construed Plaintiff's claim as a claim for negligence *per se*, Plaintiff's claim still fails as the statute "merely names the sheriff an ex officio superintendent of a jail that has been declared a workhouse." [*Id.*] (internal quotations omitted"). Finally, Defendants argue that Plaintiff cannot show that Defendant Guy breached any type of duty as he had no interaction with Decedent and any alleged "harsh and cruel" treatment towards Decedent was by another inmate and not Defendant Guy or any of his employees. [*Id.*]. Plaintiff did not specifically address this issue in her response and has not provided the Court with authority to show that Plaintiff can bring a private cause of action against Defendant Guy based on those statutes. Further, Plaintiff has not provided factual support for her state law claims and has only set forth conclusory allegations in her amended complaint. *See Bell*, 351 F.3d at 253. In light of the absence of factual support for these claims, Defendants' motion for summary judgment as

to Plaintiff's state law claims will be **GRANTED**, and Plaintiff's state law claims will be **DISMISSED**.

IV. **CONCLUSION**

Accordingly, for the reasons stated herein, Defendants' motion for summary judgment [Docs. 28] will be **GRANTED in part** and **DENIED in part**. Plaintiff's federal claims for failure to fund the jail as to all Defendants will be **DISMISSED**. Plaintiff's state law claims against Defendant Guy will be **DISMISSED**. An order consistent with this opinion will be entered.

**IT IS SO ORDERED**.

ENTER:

s/ Leon Jordan
United States District Judge